**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MIKEL D. PISTOLE,**

        Plaintiff(s),           CASE NUMBER: 07-12228
                                        HONORABLE VICTORIA A. ROBERTS

v.

**MORTGAGE ELECTRONIC**
**REGISTRATION SYSTEMS, INC.,**
**NEW AMERICAN CAPITAL, INC. d/b/a**
**WASHINGTON MUTUAL HOME LOANS,**
**WASHINGTON MUTUAL BANK, F.A., and**
**JPMORGAN CHASE BANK, N.A.,**

        Defendant(s).
_____/

**ORDER**

**I.    INTRODUCTION**

This matter is before the Court on Defendants' "Motion for Summary Judgment." (Doc. #15). Defendants ask the Court to dismiss all five counts of Plaintiff Mikel D. Pistole's ("Pistole") Complaint.

For the following reasons, Defendants' motion is **GRANTED**.

**II.    BACKGROUND**

Pistole acquired title to real property in Macomb County, Michigan on November 7, 1997. On that same date, First Chicago NBD Mortgage Company ("First Chicago") obtained a $360,000.00 adjustable-rate mortgage on the property.

First Chicago transferred its mortgage servicing rights to HomeSide Lending, Inc. ("HomeSide"). Pistole says the transfer occurred in June 1999. John Crandall,

1

Assistant Vice President of Washington Mutual, says the transfer occurred on July 4, 2004. Nevertheless, Defendant Washington Mutual Home Loans ("Washington Mutual") eventually became HomeSide's successor-in-interest and obtained the servicing rights.

On June 1, 1999, First Chicago assigned the mortgage to Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") in a nominee capacity. A second assignment from First Chicago to MERS is dated August 3, 2000.

On November 1, 2001, the Internal Revenue Service recorded a "Notice of Federal Tax Lien" because Pistole did not pay $13,480.56 in property taxes. Pistole filed a Chapter 13 bankruptcy petition on December 6, 2001. MERS objected to Pistole's plan. The bankruptcy was dismissed on May 21, 2002.

On May 29, 2002, MERS sent Pistole a letter informing him that foreclosure proceedings would begin. In a subsequent letter, MERS informed Pistole that the sale would occur on August 23, 2002 at the Macomb County Court Building.

Pistole filed a second bankruptcy petition on July 23, 2002 that was dismissed on February 14, 2003. Its filing caused the foreclosure sale to be adjourned.

The Macomb County Sheriff conducted the foreclosure sale at 10:00 a.m. on March 21, 2003, and MERS purchased the property for $408,363.72. At 11:32 a.m. on March 21, 2003, Pistole filed a third bankruptcy petition. MERS objected on May 21, 2003. The case was eventually dismissed.

On November 20, 2003, Pistole filed a Chapter 12 bankruptcy petition that was dismissed in 2005. Pistole also filed an adversary proceeding alleging irregularities in the foreclosure sale. Pistole requested that the foreclosure sale be set aside and the

Sheriff's Deed be found null and void. According to Pistole, MERS could not foreclose the mortgage because Washington Mutual was the true assignee.

In June 2005, MERS recorded an affidavit that set aside its Sheriff's Deed and the foreclosure sale. Pistole's adversary proceeding was then dismissed by stipulation on July 18, 2005. Subsequently, Pistole filed a complaint challenging the affidavit. That complaint was dismissed on July 28, 2005.

On February 6, 2006, MERS assigned the mortgage to Defendant JP Morgan Chase Bank, N.A. ("JP Morgan") (the company that acquired First Chicago). On February 17, 2006, JP Morgan posted a notice on the property informing Pistole that the Macomb County Sheriff would conduct a foreclosure sale on March 17, 2006 at the Macomb County Court Building. The sale was postponed until May 26, 2006, and JP Morgan purchased the property for $388,000.00.

Pistole, *in pro per*, filed a five-count Complaint against Defendants on May 22, 2007. He is now represented by counsel.

### III. STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In reviewing a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986).

The movant has the initial burden to demonstrate the absence of a genuine issue

3

of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant meets this burden, the nonmoving party must, by affidavit or otherwise as provided by Rule 56, "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate.  *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

## IV.    ARGUMENTS AND ANALYSIS

### A.    Pistole's Claims to Quiet Title (Counts I and III)

Pistole's arguments are not clear, but the Court assumes he makes three alternative arguments as to why he is entitled to the property.  Pistole says the affidavit that attempts to set aside the first foreclosure sale did not accomplish this because: (1) an affidavit cannot set aside a foreclosure sale; (2) the affidavit did not satisfy the statute of frauds; and (3) the individual who made the affidavit did not have the authority to set aside the sale absent ratification by First Chicago.  According to Pistole, this means: (1) the first foreclosure sale is valid; (2) MERS has an interest in the property; and (3) MERS's interest is defective because it is only a nominee that could not conduct a foreclosure sale by advertisement.

4

In the alternative, Pistole says: (1) MERS extinguished the mortgage when it purchased the property at the first foreclosure sale; and (2) the affidavit set aside the first foreclosure and disclaimed MERS's interest in the property, but did not revive the mortgage debt because there was no "meeting of the minds."  According to Pistole, title to the property does not belong to anyone, and the Court should find he is entitled to the property.

As a third alternative, Pistole argues that his interest in the property is superior to JP Morgan's interest because MERS could only transfer its nominee status to JP Morgan.  Thus, JP Morgan was only a nominee that could not conduct a foreclosure sale by advertisement.

The Court concludes that the first foreclosure sale is invalid because the parties stipulated to the dismissal of Pistole's adversary proceeding.  This necessarily means that Pistole received the relief he requested (i.e., the first foreclosure sale set aside).  Based on these circumstances, whether the affidavit was sufficient to set aside the foreclosure sale is irrelevant.

After the first foreclosure sale was set aside, the parties and the mortgage debt were restored to their pre-foreclosure status.  It would be unjust for the Court to conclude that setting aside the first foreclosure sale disclaimed MERS's interest in the property, but did not revive the mortgage debt.  The parties had a "meeting of the minds" and an agreement to revive the debt when they stipulated to the dismissal of the adversary proceeding and the relief Pistole requested.

 The only remaining issue is whether JP Morgan had the authority to conduct a foreclosure sale by advertisement under MCLA §600.3204(1)(d):   "A party may

foreclose a mortgage by advertisement if the party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage."

Pistole says JP Morgan only acquired MERS's nominee status, but MERS's assignment of the mortgage to JP Morgan was like MERS assigning it back to First Chicago because JP Morgan acquired First Chicago. There is no question that under MCLA §600.3204(1)(d), First Chicago, the owner of the indebtedness, could have conducted the foreclosure sale by advertisement. It follows that First Chicago's successor-in-interest, JP Morgan, can foreclose by advertisement.

### B. Pistole's Claim under the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act (Count II)

Pistole says MERS is a "mortgage servicer" that must have a license pursuant to the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act. *See* MCLA §445.1652(1) ("A person shall not act as a . . . mortgage servicer without first obtaining a license or registering under this act[.]").

The Court disagrees because: (1) this argument is inconsistent with Pistole's position that MERS is a "mere nominee"; and (2) Pistole does not point to any authority that says the representations MERS made in its papers filed in the bankruptcy proceedings make it a mortgage servicer. Indeed, Pistole states in his brief that "MERS . . was . . . neither [his] creditor nor the servicer of the Mortgage." Pistole's "Affidavit in Opposition to Defendants' Motion for Summary Judgment" also says, "I know that MERS is not and has never been . . . a[] . . . servicer of real estate mortgages."

### C. Pistole's Claims under the Fair Debt Collection Practices Act (Counts

**IV and V)**

The Court dismisses Pistole's claims against JP Morgan under the Fair Debt Collection Practices Act ("FDCPA") because JP Morgan does not meet the definition of a "debt collector." Pursuant to 15 U.S.C. §1692a(6)(F)(ii), "The term "debt collector" . . . does not include any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity concerns a debt which was originated by such person."

Pistole says Washington Mutual violated 15 U.S.C. §§ 1692e(2)(A), 1692f, 1692f(6)(A), and 1692f(6)(C). In connection with Pistole's 15 U.S.C. §1692f claim, he alleges Washington Mutual violated paragraph 21 of the mortgage agreement.

### 1. 15 U.S.C. §1692e(2)(A)

Section 1692e(2)(A) says:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . .

The false representation of the character, amount, or legal status of any debt[.]

According to Pistole, Washington Mutual violated this section when it: (1) misrepresented the character, amount, and legal status of the debt; and (2) threatened to foreclose on a mortgage that had already been foreclosed.

The Court disagrees for the following reasons: (1) Pistole does not dispute the amount of the mortgage debt; (2) the mortgage was restored to "active status" after the first foreclosure because that sale was invalid; and (3) the mortgage was not

7

"foreclosed" or "extinguished" once the parties agreed to set aside the first foreclosure sale. Thus, Pistole still owed the mortgage debt when the second foreclosure proceedings were initiated.

### 2. 15 U.S.C. §1692f and Paragraph 21

Paragraph 21 of the mortgage says:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Pistole says Washington Mutual was unfair in its practice in violation of 15 U.S.C. §1692f and contractually violated paragraph 21 of the mortgage agreement because it did not mail the proper notice informing him of its intent to accelerate his mortgage debt.

The Court disagrees.

In a letter dated January 27, 2006, Washington Mutual informed Pistole that: (1) his debt was past due; (2) he could reinstate the mortgage by paying all past due installments, last charges, delinquent taxes, insurance premiums, and costs and fees

8

incurred in the foreclosure; (3) he must request reinstatement information before the sheriff's sale (March 26, 2006); (4) it elects to accelerate the total indebtedness; (5) it was instructed to commence foreclosure proceedings against the property; and (6) he has 30 days to dispute the validity of the debt.

### 3. 15 U.S.C. §§ 1692f(6)(A) and 1692f(6)(C)

Under 15 U.S.C. §1692f(6)(A) and 1692f(6)(C):

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . .

Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; . . . or (C) the property is exempt by law from such dispossession or disablement.

The Court dismisses Pistole's 15 U.S.C. §1692f(6)(A) claim; there was a present right to possession of the property because the security interest (i.e., the mortgage) was in default. Pistole's 15 U.S.C. §1692f(6)(C) claim is also dismissed because he does not state how the property is exempt by law from dispossession or disablement.

## V. CONCLUSION

Defendants' motion is **GRANTED**.

**IT IS ORDERED.**

                                              s/Victoria A. Roberts
                                              Victoria A. Roberts
                                              United States District Judge

Dated: June 24, 2008

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on June 24, 2008.<br><br>s/Linda Vertriest<br>Deputy Clerk |